BURKS, J.,
delivered the opinion of the court.
The controversy in this case grows out of a contract for the sale of a tract of land entered into on the 10th day of April, 1863. A large portion of the purchase money was paid at or near the time the contract was made, and a bond was given for the residue, secured by a deed of trust on the land. The nominal amount (balance) *of the bond is $3,000, carrying interest from the 2d of July, 1863.
The appellee, Uangdon C. Major (the vendor), claims that the full amount of this bond, with the interest upon it, is due and owing to him in lawful money, and that he has the right to enforce collection by sale under the deed of trust; while the appellant (the vendee) contends that the contract for the sale was by agreement to be wholly fulfilled and performed in Confederate States treasury notes, or was entered into with reference to such notes as a standard of value; that, under the adjustment acts, he had the right to discharge the bond by paying the gold value of the nominal amount thereof, and having made the tender authorized by section 9 of chapter 138, Code of 1873, and in all respects complied with the provisions of that section, the appellee is not entitled to demand and have more than the sum tendered, without interest.
Of the numerous cases, involving dealings and transactions in or with reference to Confederate currency, which have come before this court for decision, this, I believe, is the first presenting a question under the section just cited. That section, the 5th of chapter 71 of the act passed March 3, 1866 (Acts of 1865-66, p. 184,) is in these words:
“It shall be lawful for any person bound for any debt or the performance of any contract, which has to be discharged or- performed by the payment of Confederate States treasury notes, or for the performance of any contract made with reference to such notes as a standard of value, to tender to the party entitled to demand payment or performance, or damages for non-performance, the amount demandable according to the provisions of this act; and if such party shall refuse to accept the amount so tendered, it shall be lawful for the party bound, by notice in writing duly served, to require him to institute proper legal proceedings for the recovery of such debt *or the enforcement of such contract, or for the recovery of damages for its non-performance; and if such party shall fail to institute such proceedings within three months from and after the service of such notice, he shall be forever barred and precluded from all legal remedy whatever, founded upon such debt or contract, to recover more than the sum tendered, without interest.”
Under this section: 1. The tender allowed applies to debts or contracts which were to be discharged or performed by the payment of Confederate States treasury notes, and to contracts made with reference to such notes as a standard of value. 2. The tender, made by the party bound to the party entitled, must be of the amount demandable under the provisions of the act. 3. On refusal of the party to accept the amount tendered, he must be duly served with notice in writing, requiring him to institute proper legal proceedings for the recovery of the debt, &c. 4. On failure to institute such proceedings within three months from and after the service of the notice, he is forever barred and precluded from all legal remedy whatever, founded on such debt- or contract, to recover more than the sum tendered, without interest.
The appellee, Langdon C. Major, in his answer to the bill and in his deposition, states that the contract for the sale of land to the appellant was not to be performed in Confederate currency, nor made with reference to such currency as a standard of value. No other witness testifies in his behalf. Several circumstances are relied on in support of his statement, such as the fact that the bond for the unpaid balance of purchase money stipulates on its face for the oayment of interest “annually,” and the further fact that the nominal amount agreed to be paid for the land, did not much, if any, exceed its real value before the war. But this proof, I think, is more than counterbalanced by the proof on the other side. 'The appellant and his son both testify *positively, that the sale was for Confederate currency, and there are many circumstances to sustain them.
The contract was made on the 10th day of April, 1863, when the only currency in circulation among our people was the treasury notes of the Confederate States, and the cases were rare and exceptional in which contracts were made with reference to any other kind of currency. A large portion of the purchase money, more than one-half, was paid in that currency at and soon after the sale, and when the bond was given for the residue on the 2d day of July, 1863, eight hundred dollars and more were paid in the like currency, for which a credit was endorsed reducing the amount of the bond to precisely $3,000, principal money. The bond was payable “on demand,” and a sale under *73 the deed of trust could have been required any day after its execution on due notice, and although the nominal amount agreed to be paid for the land may not have been much in excess of its actual value before the war, yet it is distinctly proved that Major, in the January before he made the sale to Compton (the appellant) at $17.15)4 per acre, offered to sell the land to another person at $15 per acre, payable in Confederate money; that the appellant made a tender to Major in December, 1867; that the latter refused to accept the amount tendered; that a notice in writing was at once duly served upon him, requiring him to institute proper legal proceedings for the recovery of the debt evidence by the bond; that he did not institute such proceedings within three months from and after the service of the notice, and has never, in fact, at any time, instituted any suit, either at law or in equity, for such recovery, and never took any steps to enforce a sale under the deed of trust until October, 1872, when the sale, then for the first time advertised by the trustee, *was stayed by an injunction awarded on the bill of the appellant filed 'in this case, are all facts not disputed.
Only two questions, therefore, remain to be considered. The first is, Was the amount tendered “the amount demandable according to the provisions of the act?”
The amount tendered was $949.66, United States currency. This sum is composed of the gold value of the $3,000 of Confererate currency, ascertained hy applying the scale of depreciation as of the date of the contract, interest computed to date of tender, and premium on the gold as of the same date. If the “amount demandable” was the value of the Confederate currency according to the gold standard, the mode adopted to determine that amount was the correct one (Fultz v. Davis, 25 Gratt. 903), and the tender was sufficient.
Under our adjustment acts, there are two standards or measures of recovery on Confederate contracts. The one already mentioned is the gold standard by which the nominal amount of the Confedarate currency is reduced, according to the scale of depreciation, to its value in gold coin, to which, interest computed till date of recovery and the premium on the coin in United States currency as of the same date, are added. This is universally the measure of recovery in cases of loans of Confederate money, and has been sometimes applied in other cases where the debtor has not been in default. Myers v. Whitfield, 22 Gratt. 780; Stearns v. Mason, 24 Gratt. 484; Merewether v. Dowdy, 25 Gratt. 232.
The other mode of adjustment is to allow in cases of sale, renting or hiring of property, the fair value of the property sold, or the fair rent or hire of'it, if the court or jury, as the case may be, think that under all the circumstances, the fair value of the property sold, or the fair rent or hire of it, would be the most just measure of recovery. Ch. 138, § 1, Code of 1873.
*While this mode of adjustment in cases of sale, or renting or hiring, is the one generally to be pursued, as declared in Pharis v. Dice, 21 Gratt. 303, and numerous cases since decided by this court, yet, as said by Judge Christian in Merewether v. Dowdy, supra, “there is no fixed rule on this subject, nor can one be laid down by which every case is to be measured. Each case must rest on its own peculiar facts.” * * * “It may be observed,” said he, “that in all cases in which the ‘property standard,’ instead of the gold value, has been adopted, the debtor has either proved to be in default in not tending the Confederate currency on the day when, by the terms of the contract, his debt was payable, or there were other circumstances which would make it inequitable to compel the creditor to receive the scaled value according to the gold standard of the Confederate currency, with reference to which the contract was made and entered into.”
Is the sum allowed to be tendered under the section before cited (§ 9, ch. 138, Code of 1873), the “amount demandable” according to the gold standard, or'is it the “amount demandable” according to the “property standard,” as it has been called? I think it is the former. By the original act, of which this section in its present form was a part, passed March 3, 1866, the only measure of recovery was the gold value of the Confederate currency. The tender must of necessity have been according to that standard.
The subsequent amendment, by the act passed February 28, 1867, of the second section of the act, by a proviso improperly attached to the first (see Pharis v. Dice, supra), was never intended, I think, and should not be construed to change the meaning and effect of the fifth section. It furnished an additional standard, it is true, by which to measure the recovery in a particular class of cases, to be applied, in the discretion of the court *or jury, according to the circumstances; but it left it to the debtor, by tender under the rule already established, to require the creditor to institute proper legal proceedings to test his right, if he claimed it. to a larger amount than the sum tendered. The prime object of the section was to enable the debtor to compel a fair and speedy adjustment of his Confederate liabilities, and as these liabilities are more readily and conveniently measured by the gold standard than any other, that standard was adopted as the better, if not the only practical one, for the purposes of tender.
The appellant having complied on his part with all the requirements of the section, Major, failing to institute the proper legal proceedings within the time prescribed, is. by the terms of the statute, forever barred and precluded from all legal remedy whatever, founded on the bond for $3,000, to recover more than the sum tendered to him, without interest.
The bar provided is of “all legal remedy whatever.” To construe these terms as descriptive of an action at law merely, would be to “stick in the bark.” Nor do I think *74 they should be limited by construction to suits, whether at law or in equity, but extended to all means sanctioned by law to coerce payment. Suits and actions are certainly within the terms, and other coercive measures allowed by law, are within the spirit if not within the.letter of the section.' It is a settled rule of construction that cases out of the letter, yet within the same mischief or cause of the making thereof, shall be within the remedy thereby provided. Broom’s Reg. Max. 83.
The power of a trustee under a deed of trust to make sale, although founded on the agreement of parties to be executed in pais, derives its efficacy from the sanction of the law, and in that sense may be said to be a “legal remedy” within the meaning of the statute. ■ To bar a suit at law or in equity for the recovery of a larger sum *than the amount tendered, and yet allow a trustee by sale to coerce payment of such sum, would defeat the intent of the statute.
This construction does not bring the statute within the category of “a law impairing the obligation of contracts.” The main design of the adjustment acts is two-fold: first, to ascertain the contract according to the true understanding and agreement of the parties; second, to give effect to that contract as thus understood.
Now, the obligation of the bond in this case does not extend beyond the value of the Confederate currency promised, nor is the deed of trust a security for any greater amount: and if the true amount, according to a just legal standard, be ascertained and tendered, it is no violation or impairment of the contract under the deed of trust to require that it shall stand as a security only for the amount so tendered.
The rule that “he who asks equity must do equity” does not impose upon the appellant the duty, under the circumstances of this case, of paying any greater amount than the sum tendered. If the appellee, Major, claimed to be entitled to a larger sum, he should have instituted his suit to test his right . within the time prescribed by the statute. Having failed to do this and delayed the assertion of his claim for more than five years, and until after the land sought to be subjected has greatly depreciated, he has no equity now to demand that his recovery shall be measured by the value of the land at time of sale', or by any other standard than the one under which the tender was made. He is entitled to the amount tendered, to-wit: $949.66, in lawful currency of the United States, without interest, subject to abatement for the amount of any valid liens and incumbrances, if any there be, on said land existing at the time of the conveyance thereof by the said Major and wife to the appellant. He is entitled to no greater sum. I am for reversing the decree *of the circuit court so far as it is in conflict with this opinion, for affirming it in other respects, and remanding the cause for further proceedings.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the contract entered into between the appellant and the appellee, Langdon C. Major, for the sale of the tract of land in the bill and proceedings mentioned, was, according to the true^ understanding and agreement of the parties, to be fulfilled or performed in Confederate States treasury notes, or was entered into with reference to such notes as a standard of value; and the appellant, in pursuance of the 9th section of chapter 138 of the Code of Virginia of 1873, having made a tender to the said appellee of the sum of $949.66 in United States currency, which was the amount demandable according to the provisions of the act of which said section is a part, for the nominal amount (3,-000) of the balance of purchase money owing by the appellant to said appellee on the contract aforesaid for the sale of the tract of land aforesaid and the interest on said balance of purchase money till the date of said tender; and the said appellee having refused to accept the amount so tendered, and after being duly served with such notice in_ writing as said section provides having failed to institute the legal proceedings therein required within the time therein prescribed, the court is of opinion that the said appellee is barred of all legal remedy whatever to recover of the appellant more than the sum tendered as aforesaid, without interest, and that the power to enforce a sale of said land under the *deed of trust given by the appellant to secure the payment of said balance of purchase money is a “legal remedy” within the spirit and meaning of said section of the act aforesaid; and that the said deed of trust is a security only to the extent of the sum tendered as aforesaid, without interest, and can be enforced for the payment of that sum only.
The court is further of opinion, that so much of the decree aforesaid as declares that the fair value of the property sold would be the most just measure of recovery in this case, and orders and decrees that the balance of purchase money owing by the appellant to the said appellee secured by the deed of trust aforesaid be fixed as in said decree stated, and that an account be taken of said balance of purchase money, to be ascertained in accordance with the rule fixed by said decree, and declares that the said appellee is not barred or precluded in this case by the 9th section of the 138th chapter of the Code of Virginia of 1873 from relying on the lien of said deed of trust to enforce the payment of what Is equitably due him according to the principles of said decree, is erroneous.
It is therefore decreed and ordered, that so much of the said decree as is hereinbefore declared to be erroneous be reversed *75 and annulled, and the residue thereof affirmed; and that the appellee, Dangdon C. Major, pay to the appellant his cosrts by him expended in the prosecution of the appeal aforesaid here. And this cause is remanded to the said circuit court of Culpeper county for further proceedings, to be had therein in conformity to the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court. . r . ; . . i . i
Decree reversed.